"This contract case is before the court on plaintiffs motion for summary judgment and defendant’s cross-motion. Plaintiff (A & H Cleaners, Inc.) alleges that its concession contract with the Army and Air Force Exchange Service (aafes or Post Exchange) granted it the exclusive privilege of providing certain laundry and dry cleaning services to residents of family housing in 'Area C’ of Fort Bragg, North Carolina. For the reasons that follow, we agree with defendant that, even assuming this to be an exclusive contract, there has simply been no breach.
"The facts in this case are stipulated. Plaintiff A & H Cleaners is a small business which has provided a laundry service on Fort Bragg since 1966. In 1974, aafes awarded plaintiff a concession contract, effective July 1, 1974, to provide laundry services including pick-up and delivery to family housing in 'Area C’ of Fort Bragg. Plaintiff soon encountered problems. As early as October 1974, plaintiff advised aafes that others (non-concessionaires) were sol *1073 iciting customers in the family housing area, aafes, in turn, notified the Post Commander of these unauthorized activities being conducted by the non-concessionaires and asked the Post Command to help stop those practices. Difficulties with unauthorized competitors continued, as did the correspondence among plaintiff and aafes and the Post Command. By letter of March 19, 1975, the Post Command outlined to plaintiff the steps that had been taken on plaintiffs behalf, informed plaintiff that the situation was being monitored, and proposed a meeting in 30 days to review the matter. No such meeting was held because, on April 14, plaintiff requested termination of the contract with respect to pick-up and delivery services in the family housing section of Area C and, on April 25, that portion of the contract was terminated.
"Plaintiff argues that it had an exclusive contract and that defendant’s failure to keep unauthorized competitors out of Area C constitutes a breach of the contract. In response, defendant contends that, far from breaching the contract, the aafes (and the Post Commander) took all actions reasonably within their power to assist plaintiff.[1]
"Assuming arguendo that this was an exclusive contract, the stipulated facts speak for themselves on the decisive question whether there was a breach. No other party to the contract ever did anything affirmatively to lessen plaintiffs enjoyment of its franchise. The most that can be said is that aafes and the Post Commander (assuming the Commander to be bound by the contract to some extent) did not do enough successfully to prohibit various strangers to the contract from interfering with plaintiff. We find, however, on the facts before us, that defendant took good faith steps to help get the non-concessionaires out of the family housing area.
"Though the fact that Fort Bragg is an 'open post’ (meaning that there are no control gates at the entry points and vehicles can move freely in and out of the unfenced Post) created constraints on the Post Command *1074 er’s ability to control visitors, the Post Command did take action. The Post Command sent letters to all local laundry firms advising them that solicitation is prohibited. It also issued flyers to residents of the housing area and dispatched notice through the Post news media to the effect that unauthorized firms had been soliciting on Post. These actions more than rebut plaintiffs claim that the contract was breached.
"We feel that plaintiffs strongest point is its argument that the Military Police (mp), Provost Marshal and the Post Command were not enforcing Post regulations restricting the activities of non-concessionaires as rigorously as in the past. But even accepting, as we must, plaintiffs uncontroverted affidavit of Charles Allen (a former affiliate of A & H Cleaners) that the enforcement practices changed after plaintiff was awarded its contract, we still see no basis for saying that defendant breached. Again, assuming that the contract was exclusive (and that the MP and Base Commander as well as the aafes had certain obligations under the contract), this court would be hard put to tell the Post Commander, in effect, how to run his command. We can assume that, in managing a military installation the size of a small town, the Post Commander is, generally, the appropriate judge of how best to allocate his resources, including the Military Police. Though we may sympathize with plaintiffs predicament, we simply cannot find any breach and, thus, cannot award plaintiff the remedy it seeks.
"it is therefore ordered, upon consideration of the briefs and exhibits of the parties, and after oral argument, that defendant’s cross-motion for summary judgment is granted. Plaintiffs motion for summary judgment is denied, and plaintiffs petition is dismissed.”
April 4, 1978
ON PLAINTIFF’S MOTION FOR REHEARING AND OTHER RELIEF ORDER
"This case comes before the court on plaintiffs motion filed March 2,1978, for rehearing and other relief pursuant *1075 to Rule 151 with reference to the Order entered herein on February 17, 1978, dismissing plaintiffs petition. Plaintiff, in its motion for rehearing suggests for the first time that the defendant’s actions may have been racially motivated. Plaintiff has not previously urged discrimination against minority contractors in support of its claim, and it is now too late. See General Electric Co. v. United States, 189 Ct. Cl. 116, 416 F.2d 1320 (1969). Upon consideration of plaintiffs motion for rehearing and other relief under Rule 151, together with the response in opposition thereto, without oral argument,
"it is ordered that plaintiffs said motion for rehearing and other relief be and the same is denied.”

 Defendant takes vigorous issue with plaintiff on several other points,(e.g., defendant denies that the contract was, in fact, exclusive). Because we agree with defendant that there was, in any event, no breach, we do not consider the other theories advanced by the defendant.